UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEPHNEE SMITH,

        Petitioner,                     Case Number: 2:12-11513
                                                      HONORABLE GERALD E. ROSEN

v.

MILLICENT WARREN,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Michigan state prisoner, Stephnee Smith, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Smith, who is currently incarcerated at the Huron Valley Correctional Facility in Ypsilanti, Michigan, challenges her convictions for six counts of first-degree criminal sexual conduct. Respondent argues that the petition should be denied because the claims are procedurally defaulted and/or meritless. For the reasons discussed, the Court denies the petition.

### I. Background

Smith's convictions arise from the sexual assault of her son M.S. The Michigan Court of Appeals described the circumstances leading to Smith's convictions as follows:

> Defendant moved in with Dennis Smith in 1999 and married him in 2001. She had three boys by two previous relationships: J.F., M.S., and D.S. At the time of the trial in 2009, J.F. was 18, M.S. was 15, and D.S. was 10. Defendant's convictions stem from M.S.'s allegations that defendant forced him to sexually penetrate her and that she performed fellatio on him at

various times. He alleged that she committed these acts at three different residences. The prosecutor charged defendant with having committed two counts of CSC I at each residence – one each for acts of vaginal penetration and one each for acts of fellatio – for a total of six counts of CSC I. At trial, the case essentially came down to a credibility contest between M.S. and defendant.

M.S. testified that he was born in March 1994. He said that his mother abused him for about two years at the home where they first lived with Dennis Smith. He said that she would approach him with her clothes off and tell him to take his clothes off. She was always "drunk" or "high" when she approached him – she would never do it when she was "like her normal self," only when "she was acting weird." He complied because he was afraid she would beat him and she told him that if he told anyone she would beat him. He said she would rub up and down on him and would take her teeth out and suck his penis. Sometimes he would get on top of her and put his penis in her vagina. He said it happened about once every month and that it happened at each of the three residences identified. He indicated that the events at the first home all happened before he was eight-years-old. He stated that it stopped when they took him away.

Lonnie Palmer testified that he was a detective with the St. Joseph County Sheriff's department. Palmer stated that he conducted a forensic interview with M.S. After the interview, he drove M.S. to the various homes where M.S. had resided and M.S. identified three homes where he remembered that abuse had occurred. Palmer said he spoke with defendant and she indicated that they resided at the first home from 1999 to 2003, the second home from 2003 to 2004, and at the last of the identified homes from 2004 to 2005. Palmer said that MS told him at the interview that he had already revealed the abuse to three people: Alice Easterday, Dennis Smith, and Rachel Drumm. M.S. also told him that the abuse happened twice per week.

Diana Kamphues testified that she was a counselor at the elementary school attended by M.S. and D.S. She stated that, in December 2006, she became involved with defendant's children after it was reported that D.S. had made some inappropriate sexual comments in the cafeteria. She spoke to D.S. after she called defendant and defendant indicated that she should speak to D.S. to determine why he would make such remarks. Kamphues said D.S. informed her that his older brother, J.F., had been molesting him.

After D.S.'s revelation, Kamphues had M.S., who was in the sixth grade,

called down to her office. She asked him about inappropriate touching and he too revealed that J.F. had touched his private areas and had forced him to touch J.F.'s private areas. Kamphues testified that she asked M.S. whether anyone else had molested him and he said, "no." She then contacted Alice Easterday about J.F.

Alice Easterday testified that she had previously worked for the St. Joseph County Juvenile Court and was the caseworker assigned to J.F. She stated that she was in the home working with J.F. quite a lot and had a cordial relationship with M.S. She testified that M.S. never revealed that he was being sexually abused by his mother.

Donna Claar testified that she knew M.S. and D.S. through their paternal grandmother and that she was currently caring for them. She stated that the boys never revealed any sexual abuse to her. She said that, at a conference concerning whether defendant would have visitation with the boys, she referred to the boys' allegations against defendant and defendant did not respond: "She looked down. She sat on her hands and kind of squirmed a little."

Rachel Drumm testified that she was defendant's neighbor. Drumm testified that defendant's boys played with her children nearly every day. She said that the boys were at her home often after defendant broke her leg and that M.S. never said that he was being abused. Drumm also stated that she never saw defendant use drugs.

Dennis Smith testified that he married defendant in October 2001. He testified that he and defendant had a baby in February 2003, but that the baby died of pneumonia five weeks later. Smith said that, although M.S. does not like his rules, he thought they had a good relationship. He stated that M.S. never revealed any abuse to him. Smith also testified that, although defendant drinks on occasion, she never used any other drugs. On cross examination he admitted that they had had marital problems and that they had had fights after defendant began to stay out all night and come home drunk. He stated that the problems occurred after the baby's death. Smith said that defendant had a nervous breakdown in the summer of 2006.

Defendant testified on her own behalf and denied having done any of the things that M.S. accused her of doing. She stated that M.S. is lying in order to get out of the house. Defendant stated that she lost her teeth because the boys' father knocked them out. She said the boys went to live with their

> father for a time after the baby died. She admitted that she used marijuana on a weekly basis, but stated that she never uses it in front of the boys.
>
> In closing, defendant's trial counsel argued that M.S. was not credible because his story was inconsistent – all the people that he claimed he told testified that he did not actually tell them. He also argued that M.S. was lying in order to get out of the house. However, the jury ultimately believed M.S. and found defendant guilty on each of the six counts of CSC I.

*People v. Smith*, No. 292876, 2010 WL 4873666, *1-2 (Mich. Ct. App. Nov. 18, 2010).

Smith filed an appeal of right in the Michigan Court of Appeals, raising these claims: (i) prosecutorial misconduct; and (ii) sentencing errors. The Michigan Court of Appeals affirmed her convictions and sentences. *Id.*

Smith filed an application for leave to appeal in the Michigan Supreme Court. She raised the same claims raised in the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Smith*, 489 Mich. 898 (Mich. 2011).

Smith then filed the pending habeas petition. She raises these claims:

I. The prosecutor's expressions of his belief about the credibility of the expert witness and appeals to the sympathy of the jurors during arguments were misconduct and deprived Ms. Smith of a fair trial.

II. Ms. Smith is entitled to resentencing where the statutory sentencing guidelines were misscored as to offense variable 10 and therefore the sentences were imposed under a misapprehension of applicable law.

III. The case should be remanded for resentencing because the trial court departed from the recommendation of the Michigan sentencing guidelines for reasons already included in the sentencing guidelines, and because the extent of the departure was extreme, particularly where a misscoring of one of the offense variables inflated the recommended range.

## II. Standard

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the AEDPA, a state prisoner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413). However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations

5

omitted); *see also Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, —, 131 S. Ct. 770, 789 (2011), (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams,* 529 U.S. at 412. Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007), *citing*

6

*Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

### III. Discussion

#### A. Prosecutorial Misconduct Claim

In her first habeas claim, Smith asserts prosecutorial misconduct. She claims that the prosecutor improperly attempted to elicit sympathy for the victim by referring to him with words such as "kid," "little boy," and "tiny, tiny, little boy", that were designed to make him seem much younger than his fifteen years. She also claims that the prosecutor improperly vouched for the credibility of expert witness, Dr. Jim Henry. Respondent argues that the first of these prosecutorial misconduct claims is procedurally defaulted. The Court finds it unnecessary to address the question of procedural default. It is not a jurisdictional bar to review of the merits of an issue, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) ( citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). Application of a procedural bar would not affect the outcome of this case, and it is more efficient to proceed directly to the merits.

The "clearly established Federal law" relevant to a habeas court's review of a prosecutorial misconduct claim is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). *Parker v. Matthews*, — U.S.—, 132 S. Ct. 2148, 2153, (June 11, 2012). In *Darden*, the Supreme Court held that a "prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). This Court must ask whether the Michigan Court of Appeals' (which, despite finding the claims not properly preserved, nevertheless, denied them on the merits) decision denying Petitioner's prosecutorial misconduct claims "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Parker*, — U.S. at —, 132 S. Ct. at 2155, (quoting *Harrington*, 562 U.S. at __, 131 S. Ct. at 786-87.

In his opening statement, the prosecutor cautioned the jury that M.S. did not look like a typical fifteen-year-old boy:

> [M.S. is] going to talk about the chaos, what was going on in the home at the time, I'm assuming. [M.S. is] going to ... present as [a] kid that looks like he's probably about 13, and he's 15. He's a tiny, tiny little boy. And until he actually gets up there and starts talking with all these people in this courtroom, not sure how the little guy's going to react.

*Smith*, 2010 WL 4873666 at *3.

The prosecutor also indicated that M.S. might not be a capable witness: "We'll see how he does," "if he can come across today," and "He's ready – at least I think ready to

get up there and tell you his story." *Id.* Smith argues that these statements also served as an attempt to portray M.S. as a frail child and elicit sympathy from the jurors.

The Michigan Court of Appeals held that the prosecutor's comments were not improper. The state court reasoned first that the statements regarding M.S.'s size were not shown to be factually incorrect, and, second, that it is not uncommon for a fifteen-year-old boy to be referred to as a boy or a kid and, where the fifteen-year-old is particularly small for his age, "little guy" would also be an appropriate term. The state court further reasoned that the prosecutor's uncertainty in opening statement about the kind of witness M.S. would be was an acceptable caution to the jury that the victim's demeanor might be unsteady and was an attempt to mitigate the "bias that the jury might have against M.S. based on his appearance and timid demeanor." *Id.* Finally, the Michigan Court of Appeals concluded that, even if the remarks were improper, any prejudice was minimal. *Id.*

A prosecutor, generally, should not "make statements calculated to incite the passion and prejudices of the jurors." *Broom v. Mitchell*, 441 F.3d 392, 412 (6th Cir. 2006) (internal quotations omitted). "'[A]rguments that encourage juror identification with crime victims are improper.'" *Wogenstahl v. Mitchell*, 668 F.3d 307, 333 (6th Cir. 2012) (citing *Johnson v. Bell*, 525 F.3d 466, 484 (6th Cir. 2008)). But, "'[n]othing prevents the government from appealing to the jurors' sense of justice or from connecting the point to the victims of the case.'" *Id.* (quoting *Bedford v. Collins*, 567 F.3d 225, 233 (6th Cir. 2009)). "[T]he *Darden* standard is a very general one, leaving courts 'more

9

leeway ... in reaching outcomes in case-by-case determinations.'" *Parker*, — U.S. —, 132 S.Ct. at 2155, (*quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

The prosecutor's references to M.S. as a "tiny, tiny little boy" and "little guy," if taken out of context, could be construed as an attempt to elicit sympathy from the jury. However, the references do not appeared designed to elicit sympathy when considered in the context of the entire opening statement and the trial as a whole. Instead, the record supports the Michigan Court of Appeals' conclusion that the prosecutor was attempting to manage the jurors' expectations and prepare them for a witness who seemed younger than his years in both appearance and demeanor. The comments do not rise to the level of having "infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181 (internal quotation omitted).

In addition, while the evidence against Smith was not overwhelming, the Michigan Court of Appeals' conclusion that the prosecutor's comments, even if improper, were not prejudicial is also not unreasonable. The state court cautioned the jurors that they were not to let sympathy or prejudice influence their decision. Petitioner has not shown that the state-court's rejection of this prosecutorial-misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker*, — U.S. at —–, 132 S.Ct. at 2155.

Second, Smith argues that the prosecutor improperly vouched for the credibility of its expert witness, Dr. Jim Henry. Dr. Henry testified as an expert in child sexual abuse.

He testified regarding the phenomenon of delayed reporting among child victims of sexual abuse, and that delay is more common when the victim is related to the offender. Dr. Henry testified generally about the ways in which children report being sexually abused, particularly in situations where they are living with their abuser. He did not offer an opinion regarding M.S.'s case specifically.

In his opening statement, the prosecutor explained that Dr. Henry would testify as an expert on child sexual abuse victims and "give you a little bit of an education about things that – that sex abuse victims might do that to you as a layman might seem odd." *Smith*, 2010 WL 4873666 at *4. The prosecutor asked the jury to listen carefully to Dr. Henry's testimony "[b]ecause I think you're going to see some thing[s] that go right along that fit this – these characteristics of a child that's had this happen to him." *Id.* After the opening statement and outside the presence of the jury, defense counsel objected to what he characterized as improper vouching. The trial court noted the objection and said that the court would give a limiting instruction before Dr. Henry's testimony, which the court did.

Prosecutors may not vouch for a witness's credibility. Prosecutorial vouching and an expression of personal opinion regarding the accused's guilt "pose two dangers: such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce

the jury to trust the Government's judgment rather than its own view of the evidence." *United States v. Young*, 470 U.S. 1, 18-19 (1985).

The Michigan Court of Appeals held that the prosecutor's comments in opening statement were not designed to vouch for the credibility of Dr. Henry or M.S., but were, instead, intended "to advise the jury that it will need Henry's testimony in order to better understand and evaluate M.S's testimony." *Id.* The Michigan Court of Appeals similarly rejected Smith's claim that the prosecutor improperly used Dr. Henry's testimony in closing argument. Smith objected to the frequency with which Dr. Henry's testimony was referenced in closing argument and the way it was intertwined with the other testimony in the case. The Michigan Court of Appeals' concluded that the prosecutor's closing argument appropriately used Dr. Henry's testimony to show that M.S.'s delay in reporting, confusion about details of abuse, and general courtroom demeanor were consistent with other victims of child sexual abuse. *Id.*

The Michigan Court of Appeals reasonably disposed of Smith's Dr. Henry-related prosecutorial misconduct claim. It was not improper for the prosecutor to ask the jury to consider M.S.'s testimony in conjunction with Dr. Henry's expert testimony. The prosecutor did not imply that he had some special information about M.S.'s or Dr. Henry's credibility. He simply asked the jury to consider that M.S.'s actions were consistent with actions of other abuse victims. Moreover, even if the state court of appeals erred, habeas relief would be denied because the court of appeals' decision was not "so lacking in justification that there was an error well understood and comprehended

12

in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S., at —, 131 S. Ct., at 786-787. Habeas relief, therefore, is denied.

### B. Sentencing Claims

Smith's second and third habeas claims challenge her sentence. She argues that the trial court erred in scoring Offense Variable 10. She also argues that the trial court erred in exceeding the sentencing guidelines.

It is well-established that "'federal habeas corpus relief does not lie for errors of state law.'" *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (*quoting Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). Smith's argument that the state court erred in scoring her sentencing guidelines is based solely on the state court's interpretation of state law. It does not implicate any federal rights. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review."); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) ("[S]tate courts are the ultimate expositors of state law."). "[A] claim that the trial court mis-scored offense variables in determining the state sentencing guidelines is not cognizable on habeas corpus review." *See Adams v. Burt*, 471 F. Supp. 2d 835, 844 (E.D. Mich. 2007); *see also Coleman v. Curtin*, 425 F. App'x 483, 484-85 (6th Cir. 2011). Therefore, habeas corpus relief is not available for this claim.

Smith's claim that the trial court erred in exceeding the sentencing guidelines also does not warrant habeas relief. Smith appears to argue that the trial court erred both in

failing to articulate substantial and compelling reasons for its departure and because the sentence was disproportionate to the offense. "The habeas statute unambiguously provides that a federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, —, 131 S. Ct. 13, 16 (2010) (quoting 28 U.S.C. § 2254(a)). The requirement that a sentencing court articulate a "substantial and compelling reason" for departure from the sentencing guidelines is found in Michigan, not federal, law. *See* Michigan Compiled Laws § 769.34(3). Whether a state court judge articulates substantial and compelling reasons for departing from the sentencing guidelines is a matter of state law. *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) ("A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only."); *see also McPhail v. Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006). "[A] mere error of state law is not a denial of due process." *Swarthout v. Cooke*, 562 U.S. 216, —, 131 S. Ct. 859, 863 (2011) (internal quotations omitted). Thus, this claim is not cognizable on federal habeas review.

  Smith's claim that her sentence was disproportionate is similarly meritless. The Supreme Court has held that "the Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin,* 501 U.S. at 1001 (quoting *Solem v. Helm*, 463 U.S. 277, 288 (1983)). Courts reviewing Eighth Amendment proportionality must remain highly deferential to the legislatures in determining the

appropriate punishments for crimes. *United States v. Layne*, 324 F.3d 464, 473-74 (6th Cir. 2003), citing *Harmelin*, 501 U.S. at 999. "In implementing this 'narrow proportionality principle,' the Sixth Circuit has recognized that 'only an extreme disparity between crime and sentence offends the Eighth Amendment.'" *Cowherd v. Million*, 260 F. App'x 781, 785 (6th Cir. 2008) (quoting *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000)). As long as the sentence remains within the statutory limits, trial courts have historically been given wide discretion in determining "the type and extent of punishment for convicted defendants." *Williams v. New York*, 337 U.S. 241, 245 (1949). Smith's sentence falls within the statutory maximum; therefore, this Court defers to the decision of the state court. *See Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) ("A sentence within the statutory maximum . . . generally does not constitute cruel and unusual punishment.") (internal quotation omitted).

## IV. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings requires that a court "issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v.*

*McDaniel*, 529 U.S. 473, 484 (2000).

In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition does not state a claim upon which habeas relief may be granted. Therefore, the Court will deny a certificate of appealability.

## V. CONCLUSION

Accordingly, **IT IS ORDERED** that the petition for a writ of habeas corpus and a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**


                                        s/Gerald E. Rosen
                                        Chief Judge, United States District Court

Dated: February 23, 2015

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 23, 2015, by electronic and/or ordinary mail.

                                        s/Julie Owens
                                        Case Manager, (313) 234-5135